IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL L. CZAPRACKI | : | No. 08-cv-823 |
| Plaintiff, | : | |
| v. | : | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION | : | Judge John E. Jones III |
| Defendant. | : | |

**MEMORANDUM**

December 5, 2008

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**

Pending before this Court is a Motion to Dismiss the Plaintiff's Complaint (the "Motion") filed by Defendant Commonwealth of Pennsylvania, Department of Transportation ("Defendant" or "PennDot") on May 16, 2008. (Rec. Doc. 5). For the reasons that follow, the Motion will be granted.

**PROCEDURAL HISTORY:**

Plaintiff Paul L. Czapracki ("Plaintiff" or "Czapracki") commenced the instant action by lodging a two-count Complaint against PennDot in the Court of Common Pleas of Luzerne County on April 4, 2008. (Rec. Doc. 1-2). Count One contains a state cause of action for wrongful termination, while Count Two contains

federal claims asserting deprivations of his rights to due process and equal protection. (Id.). On May 2, 2008, the Defendant removed the case from state court to the Middle District of Pennsylvania. (Id.).  On May 16, 2008, the Defendant filed the instant Motion and a supporting brief, requesting dismissal of the Complaint pursuant to either Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6).[1] (Rec. Docs. 5, 6).  The Plaintiff submitted his brief in opposition to the Motion on July 29, 2008, (Rec. Doc. 9), and the Defendant responded with a reply brief the very next day, (Rec. Doc. 16).  Since the Motion has been fully briefed, it is now ripe for disposition.

**STANDARD OF REVIEW:**

When considering a motion to dismiss under Rule 12(b)(1), a court must distinguish between facial and factual challenges to its subject matter jurisdiction. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether the plaintiff has properly pled jurisdiction. Id. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs., Inc. v. United States, 220 F.3d 169, 176

---

[1] Federal Rule of Civil Procedure 12(b)(1) asserts that the Court lacks subject matter jurisdiction, and Rule 12(b)(6) asserts that the complaint fails to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12.

(3d Cir. 2000) (citing Mortensen, 549 F.2d at 891). A factual attack, in contrast, challenges jurisdiction based on facts apart from the pleadings. Mortensen, 549 F.2d at 891. "When a defendant attacks subject matter jurisdiction 'in fact,' . . . the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. In such a situation, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" Carpet Group Int'l v. Oriental Rug Importers Ass'n, 227 F.3d 62, 69 (3d Cir. 2000) (quoting Mortensen, 549 F.2d at 891).

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon

which it rests." Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d at 232 (citing Twombly, 127 S. Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the proscribed] conduct, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965, 1969 n.8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. at 231 (citing Twombly, 127 S. Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply

calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234.

**STATEMENT OF MATERIAL FACTS**:[2]

At all times relevant to the instant action, the Plaintiff was employed by PennDot as a highway foreman in its Luzerne County Maintenance Office. (Rec. Doc. 1-2 ¶ 3). On February 17, 2007, when Plaintiff completed a twelve (12) hour work shift, he returned home expecting to rest and relax until February 20, 2007, his next scheduled day of work at PennDot. (Id. ¶¶ 5, 6). In the comfort of his home, he consumed a few alcoholic beverages and settled in for the weekend. (Id. ¶ 7). However, Luzerne County was then in the midst of what would be a large, crippling snowstorm, and so the Plaintiff's respite was soon interrupted by a late night phone call ordering him to return to work. (Id. ¶¶ 4, 8).

The Plaintiff clocked-in at midnight and continued to work throughout the night in his capacity as a highway foreman. (Id. ¶¶ 8, 9). At around 4:45 a.m., the Plaintiff took a break in his PennDot vehicle, which ultimately led to him falling asleep in said vehicle, which was parked on the side of the road in the northbound lane of Route 239. (Id. ¶¶ 10, 11). Plaintiff was eventually roused by a

---

[2] Since the resolution of the instant Motion requires us to accept as true all of the allegations in the Complaint, the following recitation of facts is taken therefrom.

Pennsylvania State Police Officer and subsequently escorted to a local hospital under suspicion of driving under the influence ("DUI").[3] (Id. ¶ 12).  After voluntarily participating in the State Employees Assistance Program and completing two conferences and two evaluations, Plaintiff was suspended pending a PennDot investigation.  (Id. ¶¶ 13-17).  PennDot notified Czapracki that the investigation revealed evidence supporting various charges.[4]  Plaintiff was then informed that he had been scheduled to attend a Pre-Disciplinary Conference on March 28, 2007 for the purpose of discussing the allegations and responding in detail to the charges against him. (Id. ¶ 25).  Czapracki attended the conference and answered questions posed to him by PennDot officials related to the events of February 17-18, 2007. (Id. ¶ 26).  Despite only conducting a brief interview with the Plaintiff and having no other witnesses called to testify and/or produce evidence as to the events in question, PennDot officials subsequently notified Czapracki that the responses he provided at the conference were unacceptable and that his

---

[3] Czapracki was subsequently charged with and pled guilty to a DUI offense, a conviction which imposed a suspension of his driving privilege for one year, effective June 1, 2007. (Id. ¶ 18).

[4] These charges included: (1) Violation of the Governor's Code of Conduct; (2) Major Work Rule #1–Any act which might endanger the safety or lives of others; (3) Being found under the influence of alcohol, and with alcohol present in a Department vehicle and on Department time; (4) Being found in a sleeplike state on Department time; (5) Minor Work Rule #13–Violation of minor safety rules; and (6) Minor Work Rule #15–Failure to complete and submit a request for outside employment. (Id. ¶ 19).

employment was terminated. (Id. ¶ 27).

Plaintiff argues that not only was he deprived of notice and a hearing,[5] but also that the conference of March 29, 2007 did not provide him with a fair opportunity to defend himself against the charges which ultimately led to his termination. (Id. ¶ 32). Czapracki urges that not only was there a lack evidence to support the charges lodged against him, meaning that there were insufficient grounds for his termination, (Id. ¶ 28), but also that, in being terminated, he was treated differently than similarly situated individuals,[6] (Id. ¶¶ 36-39). As a result of these wrongs, Plaintiff requests that he be immediately reinstated to his former position and title with PennDot, and that he be awarded compensatory and punitive damages. (Id. ¶¶ 30, 41).

**DISCUSSION:**[7]

---

[5] Czapracki claims that he was entitled to procedural due process pursuant to a union agreement that imposed a multi-step process, which included arbitration, in resolving employment issues such as his. (Id. ¶ 41). He avers that he was denied this right to arbitrate in spite of the fact the he was entitled to a hearing. (Id.).

[6] Plaintiff asserts that a PennDot employee pled guilty to offenses related to bank larceny, stolen credit cards, and fraud, but was never reprimanded, suspended, or removed from his position. (Id. ¶ 37). Plaintiff avers that there are a multitude of instances predating the events in question where PennDot employees were charged with DUI offenses while in state-owned vehicles and/or on state time but were never discharged from their employment with PennDot. (Id. ¶ 39).

[7] While the Motion requests dismissal pursuant to both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6), we will focus on the latter at the outset, as it comprises the thrust of the Motion.

Initially, we note that the Defendant asserts that the instant Motion should be granted because the Plaintiff failed to file an opposing brief within the time frame established by the local rules.[8] These rules were implemented in order to promote judicial economy; they streamline our workload by allowing us to summarily eliminate claims or motions that have been abandoned. They were not intended to operate upon claims or motions which are actively being litigated.

In the present case, the Plaintiff's brief in opposition was filed almost sixty days after the time period in which to do so had expired. Plaintiff's counsel unquestionably should have exhibited more professional diligence. It is fortuitous for Plaintiff that the cases currently on our docket prevented us from resolving the instant Motion prior to the filing of his opposition brief. While said brief was undoubtedly filed well beyond the given period in which to do so, the eventual filing of that document indicates that he has not abandoned his claims and actively seeks to litigate them. Thus, we will exercise our discretion and resolve the Motion

---

[8] Local Rule 7.6 provides that a brief opposing a pretrial motion must be filed within fifteen days of the service of the movant's supporting brief. M.D. Pa. L. R. 7.6. In computing periods of eleven days or more, weekends and holidays are be counted. Fed. R. Civ. P. 6(a). In this case, three additional days would be added to the fifteen day period because the Defendant's supporting brief was filed electronically. Fed. R. Civ. P. 6(e). The local rules provide that "any respondent who fails to comply . . . shall be deemed not to oppose [the] motion." M.D. Pa. L.R. 7.6. Since the supporting brief was filed on May 16, 2008, the Plaintiff's brief in opposition had to be filed by June 4, 2008. The opposition brief was not in fact filed until July 29, 3008, and the Defendant requests judgment in its favor based on this ground.

on its merits.

Initially, Defendant asserts that the Plaintiff's entire Complaint should be dismissed because it is entitled to sovereign immunity, as granted by the Eleventh Amendment to the United States Constitution. This Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI. The Supreme Court of the United States has consistently interpreted the Eleventh Amendment to preclude suits against a state by citizens of that state. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985); Pennhurst State Sch. v. Halderman, 465 U.S. 89, 98 (1984); Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). Indeed, the Supreme Court has further opined,

> Despite the narrowness of its terms . . . we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact, that the judicial authority in Article III is limited by this sovereignty, and that a state will therefore not be subject to suit in federal court unless it has consented to suit, either expressly or in the plan of the convention.

Blatchford v. Native Village of Noatak & Circle Village, 501 U.S. 775, 779 (1991) (internal citations and quotations omitted).

Indeed, sovereign immunity shields from suit not only the state itself, but also

protects state agencies and departments. Holdampf v. Fidelity & Cas. Co. of New York, 793 F.Supp. 111, 115 (W.D. Pa. 1992) ("[I]n the absence of consent, a suit in which a State or one of its agencies or departments is named as the Defendant is proscribed by the Eleventh Amendment." (quoting Pennhurst, 465 U.S. at 100)). PennDot has been held to be an agent of the state. Goad v. Pennsylvania Dep't of Transp., 530 F.Supp. 342, 344 (W.D. Pa. 1984) (holding that PennDot is the alter ego of the state and is, therefore, immune from suit under the Eleventh Amendment). Since PennDot, as the only named defendant, is entitled to sovereign immunity, there must be a *specific* waiver of immunity or consent to suit in order for the Complaint to be viable.[9] See 1 Pa. C. S. § 2310 (1998); see also Blatchford, 501 U.S. at 779.

Ostensibly cognizant of the unfavorable milieu of the law, Plaintiff proceeds to make a rather confounding argument as to why Eleventh Amendment sovereign immunity does not apply in the instant case. Despite not mentioning 42 U.S.C § 1983 ("§ 1983") at any point in the Complaint, Plaintiff, in his opposition brief, asserts that he has properly averred a cause of action under § 1983 and that this

---

[9] It is important to note that sovereign immunity is not dependent upon the type of relief requested; it is applicable in suits seeking money damages as well as equitable relief. Alabama v. Pugh, 438 U.S. 781 (1978). Therefore, absent a waiver, it shields PennDot in both law and equity.

alone defeats sovereign immunity. (Rec. Doc. 9 p. 3).  In making this argument, Plaintiff relies on the dictates of <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978), which states that a municipality is liable under § 1983 "when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict the injury." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).  This argument is unavailing for a plethora of reasons.

    First, <u>Monell</u> addresses municipalities and local government units, and holds that these entities can be directly sued under § 1983 for customs and policies that violate the federal Constitution.  <u>See</u> <u>generally</u> <u>id.</u>  However, the <u>Monell</u> Court specifically limited its holding to "local government units which are not considered part of the state for 11th Amendment purposes." <u>Id.</u> at 690 n. 4.  <u>Monell</u> is thus expressly inapposite in the instant matter, as the case <u>sub</u> <u>judice</u> involves a department of the *state* government that *is* afforded Eleventh Amendment protection.  Second, even if <u>Monell</u> could save Plaintiff in the instant matter, which ti does not for the reasons aforesaid, the Complaint is not only devoid of any mention of § 1983, it is also completely bereft of any averment that the Plaintiff's alleged injuries were inflicted pursuant to a governmental custom or policy.  Indeed, the Complaint itself seems to support an antithetical conclusion, as the assertion of disparate

treatment would rationally lead one to believe that Plaintiff was treated in contravention to the dictates of PennDot policy, if any such policy existed.  In short, Plaintiff has not properly averred a Monell claim.  Third, even if there were proper § 1983 averments contained in the Complaint, those allegations alone would not strip PennDot of its sovereign immunity.  "Although Congress may expressly abrogate a state's Eleventh Amendment immunity pursuant to its enforcement power under section 5 of the Fourteenth Amendment, Congress did not do so in passing § 1983." THE FEDERAL JUDICIAL CENTER, SECTION 1983 LITIGATION 51-52 (1998) (citing Quern v. Jordan, 440 U.S. 332, 342 (1979)).  The Eleventh Amendment is therefore applicable to § 1983 litigation and would provide immunity to PennDot absent a finding of consent to suit or express waiver of the immunity.

 The Pennsylvania General Assembly has only *specifically* waived immunity in nine narrow categories of *negligence* actions, which include: (1) operation of a motor vehicle in the control or possession of a Commonwealth party; (2) health care employees; (3) care, custody, or control of personal property; (4) Commonwealth-owned property; (5) potholes or other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S. § 8522 (1986).  The causes of action contained in the Complaint, intentional tort and deprivation of federal constitutional rights, do not

appear in the above enumeration.  Therefore, Pennsylvania has not specifically waived its Eleventh Amendment immunity for any of the purposes of this case. Additionally, Pennsylvania simply has not consented, either generally or in similar situations, to suit against it in federal court. Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d. Cir. 1981).  In short, the Plaintiff has provided no viable authority for the proposition that PennDot should not be afforded sovereign immunity in the instant matter.

Accordingly, accepting all factual allegations as true and construing the Complaint in the light most favorable to the Plaintiff, there is no set of facts that would entitle Plaintiff to relief because the Defendant is immunized from the instant suit by the Eleventh Amendment to the United States Constitution.  Any attempted amendment hereto would clearly be futile.  We will therefore grant the Motion pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the spirit of judicial economy, we decline to explore alternative arguments for relief, including those available pursuant to Federal Rule of Civil Procedure 12(b)(1).  An appropriate order will enter.